ORDERED SEALED BY COURT

Unsealed as of 5/13/09

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

In the Matter of the Search of

08 MAR -5 AM 10: 08

CLERK U.S. DISTRICT COURT

315 Westbourne Street
La Jolla, California
and red Ford Mustang
CA Tag 6BUV942

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT** 08 MJ 0672

**CASE NUMBER:**

DEPUTY

I, John Liam Gimon, being duly sworn depose and say:

I am an Inspector of the United States Postal Service and have reason to believe that on the property or premises known as:

See Attachment A

in the Southern District of California there is now concealed a certain person or property, namely:

See Attachment B

which is:

Evidence, fruits of crime, property designed for use or used in committing criminal offenses including violations of Title 18, United States Code, Sections 1341 and 1956.  The facts to support a finding of probable cause are as follows:

See attached Affidavit of John Liam Gimon continued on the attached sheet and made a part hereof.   _X_ Yes _____ No

JOHN LIAM GIMON
United States Postal Inspector

Sworn to before me, and subscribed in my presence
March 5, 2008 at San Diego, California:

HONORABLE CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE

<u>Attachment A</u>

The residence and vehicle of Benjamin Anderson, which is located at 315 Westbourne Street, La Jolla, California.  The residence is a multi-level, brown attached condominium located off of Westbourne Street, behind 303 Westbourne Street, La Jolla, California.  The residence is abutted in the rear by an alleyway, with two (2) individual garages allowing access to the alleyway.  The front door of the residence is facing north towards Westbourne Street. The front door is located behind a tall wooden fence, with the number 315 in metal numbers located on the gate.  Next to the front door is a large sliding glass door.

The vehicle, usually parked in front of the residence, is a red Ford Mustang Saleen with California license tag 6BUV942.

## ATTACHMENT B

Authorization is sought to search for and seize evidence that Benjamin Anderson utilized online auction sites and the U.S. Mail to defraud individuals in violation of Title 18, United States Code, Section 1341, Mail Fraud and used the proceeds to promote the carrying on of that activity and conceal the proceeds of that activity in violation of Title 18, United States Code, Section 1956. Authorization to search includes any detached structures from the primary premises if such additional structures exist. This authorization includes the search of physical documents and includes electronic data to include deleted data, remnant data and slack space. The seizure and search of computers and computer media will be conducted in accordance with paragraph 21 of the affidavit submitted in support of this warrant. Items to be seized specifically include the following:

- Any and all records and information reflecting any online auction activity and including any activity by Apro Auctions, Apropos Auctions, and Apropras Auctions;

- Bank statements and other records of financial transactions;

- Tax information to include Federal and State returns;

- All communications with sellers and purchasers regarding online auctions;

- All evidence reflecting violations of Title 18, United States Code, Section 1341 regarding online auctions; and,

- All evidence reflecting the disposition of proceeds from sales in online auctions; and,

- All evidence identifying any co-conspirators in the fraudulent online auction scheme.

## AFFIDAVIT FOR SEARCH WARRANT

I, John Liam Gimon, being duly sworn hereby depose and state:

1.    I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service. My duties include the investigation of violations of the mail fraud statutes. I have been employed as a Postal Inspector since February 2006. From May 2006 until this time I have been assigned to the Mail Fraud Team. Previous to that, I was employed with the U.S. Secret Service as a Special Agent for over ten (10) years and worked on several identity theft and fraud investigations. I received basic training from the U.S. Postal Inspection Service which included instruction regarding the investigation of mail fraud schemes.

2.    This affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors, fraud investigators and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

3.    This affidavit is submitted in support of an application for a search warrant for the residence of Benjamin Anderson, located at 315 Westbourne Street, La Jolla, California, and his personal vehicle, as described in Attachment A, for evidence of violations of Title 18, United States Code, Section 1341 (mail fraud) and Title 18, United States Code, Section 1956 (money laundering) as described in Attachment B.

## FACTS SUPPORTING PROBABLE CAUSE

4.    In November of 2007, the U.S. Postal Inspection Service was contacted by Jeanine Raab, 12311 Alray Place, Tustin, CA 92780, regarding a mail fraud complaint against Apro Auctions LLC. Raab stated that on October 16, 2007, she had won an online auction from Apro Auctions LLC for four (4) items valued at $67.00. Raab further stated she had mailed a check from her Washington Mutual checking account to Apro Auctions and never received her items she had won. Raab supplied a copy of her cancelled check that had been stamped Apropros Auctions LLC, Ben Anderson, and was deposited on 10/22/2007 into Comerica Bank, account number 1851462687, at its branch on Towne Center Drive in San Diego, California. The complaint listed the address for Apro Auctions as 7514 Girard Avenue #1-515, La Jolla, CA 92037.

5.    On December 5, 2007, I contacted Amy Lee, the manager of the Postal Annex store located at the above listed address. Lee stated an individual identified as Meir Waknine opened postal boxes number 515 and 516 under the company name of Aproposauctions.com. Lee stated Waknine opened this box on September 20, 2007, and also listed Ben Anderson as authorized to receive mail at this box. Waknine supplied an address of 12714 Cumpston Street, Valley Village, CA 91607, telephone number 818-220-3373. Waknine also supplied a copy of his California driver's license, number D228075, and a copy of his telephone bill. Lee supplied me a copy of the PS Form 1583, Application for Delivery of Mail through Agent, that Waknine had filled out for the box.

6.    According to Lee, Benjamin Anderson supplied a copy of his Michigan driver's license to the Postal Annex sometime later. Lee and several of the workers informed me that Benjamin Anderson is the only one who checks the mail at this postal box and that he does so almost everyday.

7.    A search of the Postal Inspection Service Fraud Complaint system revealed multiple complaints against Apro Auctions, Apropos Auctions, and Apropras Auctions, as well as complaints against Ben Anderson. A total of seventy five (75) complaints are listed in the Fraud Complaint system, with a total loss approaching $20,000. A search of the Consumer Sentinel Fraud Complaint system and the Consumer Sentinel System revealed approximately one hundred fifty (150) complaints against Ben Anderson and Apropros auctions, totaling $235,277.00.

8.    The majority of the complaint against Anderson and his companies from the Postal Inspection Service Fraud Complaint system and the Consumer Sentinel deal with failure to render products. Typically, according to these complaints, the buyer in an online auction wins the item, sends his or her payment through the mail (all payments to Apropos Auctions went through the US Mail system) and would not receive the item purchased from Apropos Auctions. T

9.    A search of the US Postal Service records, to include Post Office Box Applications and Change of Address forms revealed a total of eleven (11) separate addresses for Apropos Auctions in three (3) years. My experience as a Postal Inspector has taught me that individuals involved in a fraud scheme tend to change addresses several times per year in an effort to hide their activities and true location.

2

1    10.    Specifically, review of the PS Form 1093 filings revealed that Apropos Auctions opened

2    its first PO Box on October 13, 2004, and was for PO Box 130709, Ann Arbor, MI 48113. Anderson

3    then moved his operations to four (4) different locations in Michigan.  Sometime in early 2006,

4    Anderson moved Apropos Auctions to the Los Angeles, CA area.  Then, on June 4, 2007, Benjamin

5    Anderson opened a PO Box located at 7486 La Jolla Blvd, Suite 289, mailbox #472, La Jolla, CA 92032.

6    Anderson utilized a copy of his Michigan driver's license and a local gym card as identification.

7    Anderson also listed his current address at that time as 1025 Kronner, Columbus, MI 48063.  On

8    September 20, 2007, Waknine Meir opened the Postal box for Apropos Auctions at 7514 Girard Avenue

9    #1-515, La Jolla, CA 92037.

10    11.    On February 4, 2008, I conducted a surveillance of PO Box number 515, 7514 Girard

11    Avenue, LA Jolla, CA, 92037.  I observed an individual matching Anderson's description and the

12    Michigan driver's license photo attributed to Anderson, retrieve mail from box number 515.

13    12.    On February 6, 2008, I again observed an individual matching Anderson's description

14    and photo retrieve mail from mail box number 515, 7154 Girard Avenue, La Jolla, CA 92037.

15    Anderson retrieved his mail from his Postal box and returned to his vehicle, a red Ford Mustang Saleen

16    with no tag but a temporary sticker on his front windshield.  Anderson sat in his vehicle and read through

17    his mail.  The vehicle now carries California license tag 6BUV942.  I followed Anderson as he drove

18    from his mailbox to the Comerica Bank branch at 9255 Towne Centre Dr # 110, San Diego, CA.  I

19    observed Anderson enter the bank with several envelopes.

20    13.    On February 8, 2008, I conducted a review of the State of Michigan's Bureau of

21    Commerce website. Apropos Auctions, LLC, changed registration on March 17, 2005 from Brent Dupay

22    as resident agent, to Benjamin J. Anderson.  The address of the registered office is 1025 Kronner,

23    Columbus, Michigan 48063.  Apropos Auctions, a domestic limited liability company, identification

24    number B7514T, was originally registered October 7, 2004.

25    14.    On February 12, 2008, I conducted a surveillance on Anderson's Postal Box located at

26    7154 Girard Avenue, La Jolla, CA.  I observed Anderson retrieve his mail and return to his red Ford

27    Mustang Saleen.  Anderson sorted through the mail he had obtained from his Postal box in his vehicle

28    for several minutes before returning to 315 Westbourne Street, La Jolla, CA, 92037.

3

1    15.    On February 19, 2008, I conducted an early morning surveillance on 315 Westbourne

2  Street, La Jolla, CA 92037. I observed Anderson's red Ford Mustang parked on the street directly in

3  front of the residence.

4    16.    On February 25, 2006, I conducted a surveillance on Anderson's residence. I observed

5  Anderson leave his residence carrying an open lap top computer. Anderson then drove his Red Ford

6  Mustang to the Postal Annex store located at 7154 Girard Avenue, La Jolla, CA 92037. I observed

7  Anderson retrieve mail from his mailbox and return to his car where he sorted the mail for several

8  minutes. I then observed Anderson drive to Comerica Bank, located at 9255 Towne Centre Dr # 110,

9  San Diego, CA. Upon leaving the bank, Anderson made one stop and then returned home.

10    17.    On February 26, 2008, I was contacted by the La Jolla Post Office regarding a certified

11  letter addressed to Ben Anderson, 315 Westbourne Street, La Jolla, CA 92037. I retrieved the certified

12  letter from the La Jolla Post Office and acting in an undercover capacity as a US Postal Service Letter

13  carrier I delivered the certified letter to Anderson. I contacted Anderson at 315 Westbourne Street, La

14  Jolla, CA 92037, verified he was a resident of the address, and further verified that he was Ben

15  Anderson. Anderson accepted and signed for his letter.

16    18.    Also on February 26, 2008, I contacted Amy Lee, the manager of the Postal Annex, 7154

17  Girard Avenue, La Jolla, CA, and inquired if Anderson ever mailed anything from her store. It should

18  be noted that this Postal Annex store is able to mail items utilizing the US Postal Service, UPS, FedEX

19  and DHS. Lee stated that Anderson comes to her store almost everyday, but has never shipped or mailed

20  anything that she can remember. I also contacted Yahaira Martinez, at the PakMail store, located at 7486

21  La Jolla Boulevard, La Jolla, CA 92037. I inquired if she remembers Anderson ever mailed any items

22  utilizing her store. Martinez was unable to recall Anderson ever mailing any items through her store.

23    19.    Also on the same date, I was contacted by Ellen Stein, Brooklyn, New York. Stein stated

24  she had won an online auction on the eBay website on January 28, 2008. Stein stated the item, a vintage

25  periodical, had been offered by eBay screen name Dorsondeals. Stein stated she mailed a check for

26  $13.95 to Apropos Auctions, LLC, 7514 Girard Avenue #1-515, La Jolla, CA 92037 on February 2,

27  2008. Stein stated the check was cashed into Ben Anderson's Apropos Auctions account at Comerica

28

4

1 Bank on February 8, 2008. Stein further stated she sent and received several emails from Anderson, but
2 has never received her merchandise.

3      20.     Accordingly, there is probable cause to believe there exists evidence, fruits and
4 instrumentalities of violations of Title 18, United States Code, Section 1341, Mail Fraud and Title 18,
5 United States Code, Section 1956, Money Laundering, as provided in Attachment B, at the residence
6 and in the vehicle of Ben Anderson, as provided in Attachment A.

7 COMPUTER SEARCH PROTOCOL

8      21.     With the approval of the court in signing this warrant, agents executing this search
9 warrant will employ the following procedures regarding computers that may be found on the premises
10 which may contain information subject to seizure pursuant to this warrant:

11 Forensic Imaging

12 a.     There is probable cause to believe that the computer(s) used by Anderson to run his
13     online auctions and communicate with distraught customers are instrumentalities of the
14     offense of mail fraud. Consequently, the computer is subject to seizure as provided at
15     Rule 41(c)(3), Fed.R.Crim.P., and will be seized and transported offsite for imaging.
16     Once a verified image has been obtained and the data subjected to a preliminary review,
17     any computers which do not appear to have been used to commit mail fraud will be
18     returned to the owner. Images, however, will be retained for thorough examination. The
19     imaging and preliminary review process, depending upon the number of computers
20     seized, the volume of data contained on the computers, any steps taken by the owners to
21     conceal the stolen data or use of that data and the software deployed on the computers,
22     can take up to 30 days. It should be noted that some database programs cannot be
23     searched by keywords without first extracting the data from the image and importing it
24     into a new, clean compatible version of the database software on a separate, forensic
25     computer. For computers that are retained, the owner may apply in writing to the
26     undersigned for return of specific data which is not subject to seizure which the owner
27     requires. The United States Postal Inspection Service will reply in writing. In the event
28     that the owner's request is granted, arrangements will be made for a copy of the

5

1   requested data to be obtained by the owner.  If the request is denied, the owner will be

2   directed to Rule 41(g), Federal Rules of Criminal Procedure.

3   b.   A forensic image is an exact physical copy of the hard drive or other media.  It is

4   essential that a forensic image be obtained prior to conducting any search of the data for

5   information subject to seizure pursuant to this warrant.  A forensic image captures all of

6   the data on the hard drive or other media without the data being viewed and without

7   changing the data in any way.  This is in sharp contrast to what transpires when a

8   computer running the common Windows operating system is started, if only to peruse

9   and copy data - data is irretrievably changed and lost.  Here is why:  When a Windows

10  computer is started, the operating system proceeds to write hundreds of new files about

11  its status and operating environment.  These new files may be written to places on the

12  hard drive that may contain deleted or other remnant data.  That data, if overwritten, is

13  lost permanently.  In addition, every time a file is accessed, unless the access is done by

14  trained professionals using special equipment, methods and software, the operating

15  system will re-write the metadata for that file.  Metadata is information about a file that

16  the computer uses to manage information.  If an agent merely opens a file to look at it,

17  Windows will overwrite the metadata which previously reflected the last time the file

18  was accessed.  The lost information may be critical.

19  c.   Special software, methodology and equipment is used to obtain forensic images. Among

20  other things, forensic images normally are "hashed", that is, subjected to a mathematical

21  algorithm to the granularity of 1038 power, an incredibly large number much more

22  accurate than the best DNA testing available today. The resulting number, known as a

23  "hash value" confirms that the forensic image is an exact copy of the original and also

24  serves to protect the integrity of the image in perpetuity.  Any change, no matter how

25  small, to the forensic image will affect the hash value so that the image can no longer be

26  verified as a true copy.

27

28

6

Forensic Analysis

d.    After obtaining a forensic image, the data will be analyzed. Analysis of the data following the creation of the forensic image is a highly technical process that requires specific expertise, equipment and software. There are literally thousands of different hardware items and software programs that can be commercially purchased, installed and custom-configured on a user's computer system. Computers are easily customized by their users. Even apparently identical computers in an office environment can be significantly different with respect to configuration, including permissions and access rights, passwords, data storage and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

e.    Analyzing the contents of a computer, in addition to requiring special technical skills, equipment and software also can be very tedious. It can take days to properly search a single hard drive for specific data. Searching by keywords, for example, often yields many thousands of "hits," each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. As mentioned above, the computer may have stored information about the data at issue: who created it, when it was created, when was it last accessed, when was it last modified, when was it last printed and when it was deleted. Sometimes it is possible to recover an entire document that never was saved to the hard drive if the document was printed. Operation of the computer by non-forensic technicians effectively destroys this and other trace evidence. Moreover, certain file formats do not lend themselves to keyword searches. Keywords search text. Many common electronic mail, database and spreadsheet applications do not store data as searchable text. The data is saved in a proprietary non-text format. Microsoft Outlook data is an example of a commonly used program which stores data in a non-textual, proprietary manner+ ordinary keyword searches will not reach this data. Documents printed by the computer, even if the document never was saved to the hard drive, are

7

1    recoverable by forensic examiners but not discoverable by keyword searches because the

2    printed document is stored by the computer as a graphic image and not as text.  Similarly,

3    faxes sent to the computer are stored as graphic images and not as text.

4    f.    Analyzing data on-site has become increasingly impossible as the volume of data stored

5    on a typical computer system has become mind-boggling.  For example, a single

6    megabyte of storage space is the equivalent of 500 double-spaced pages of text.  A single

7    gigabyte of storage space, or 1,000 megabytes, is the equivalent of 500,000 double-

8    spaced pages of text.  Computer hard drives are now capable of storing more than 100

9    gigabytes of data and are commonplace in new desktop computers.  And, this data may

10    be stored in a variety of formats or encrypted.  The sheer volume of data also has

11    extended the time that it takes to analyze data in a laboratory.  Running keyword searches

12    takes longer and results in more hits that must be individually examined for relevance.

13    Even perusing file structures can be laborious if the user is well-organized.  Producing

14    only a directory listing of a home computer can result in thousands of pages of printed

15    material most of which likely will be of limited probative value.

16    g.    Based on the foregoing, searching any computer or forensic image for the information

17    subject to seizure pursuant to this warrant may require a range of data analysis techniques

18    and may take weeks or even months.  Keywords need to be modified continuously based

19    upon the results obtained; criminals can mislabel and hide files and directories, use codes

20    to avoid using keywords, encrypt files, deliberately misspell certain words, delete files

21    and take other steps to defeat law enforcement.  In light of these difficulties, your affiant

22    requests permission to use whatever data analysis techniques reasonably appear necessary

23    to locate and retrieve digital evidence within the scope of this warrant.

24    h.    All forensic analysis of the imaged data will be directed exclusively to the identification

25    and seizure of information within the scope of this warrant.

26

27

28

8

CONCLUSION

22.    For the foregoing reasons, this Court is requested to authorize the search of the premises and vehicle described in Attachment A for the evidence described in Attachment B.  Inasmuch as this is a continuing investigation unknown to the subject and the data and other evidence may easily be destroyed, this application and affidavit should be sealed by the Court.


John Liam Gimon
Postal Inspector

Sworn to before me, and subscribed in my presence, on this
5th day of March, 2008:


HONORABLE CATHY ANN BENCIVENGO
UNITED STATES MAGISTRATE JUDGE